**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

LOU GEILER and LARRY MOORE, individually and on behalf of all participants and dependents in the Northern Natural Gas Company Medical and Dental Plan for Retirees and Surviving Spouses, MIDAMERICAN ENERGY COMPANY PENSION AND EMPLOYEE BENEFITS PLANS ADMINISTRATIVE COMMITTEE, and WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee of the MidAmerican Energy Company Master VEBA Trust,

Plaintiffs,

v.

ROBERT W. JONES, SARAH A. DAVIS, RICHARD LYDECKER, GARY SMITH, KRISTE K. SULLIVAN, ARLENE BARNETT, LYZETTE PALMER, J.P. MORGAN CHASE BANK OF TEXAS, TEXAS COMMERCE BANK, NORTHERN PLAINS NATURAL GAS COMPANY, TRANSWESTERN PIPELINE COMPANY, FLORIDA GAS TRANSMISSION COMPANY, ENRON LIQUIDS PIPELINE COMPANY, AND JOHN AND JANE DOES (real names unknown),

Defendants.

Case No. ____________

**COMPLAINT, DEMAND FOR JURY AND REQUEST FOR PLACE OF TRIAL**

Plaintiffs Lou Geiler ("Geiler"), Larry Moore ("Moore"), MidAmerican Energy Company Pension and Employee Benefits Plans Administrative Committee ("MEC Committee"), and Wells Fargo Bank, National Association ("Wells Fargo") state and allege the following for their claims for relief against Defendants Robert W. Jones ("Jones"), Sarah A. Davis ("Davis"), Richard Lydecker ("Lydecker"), Gary Smith

("Smith"), Kriste K. Sullivan ("Sullivan"), Arlene Barnett ("Barnett"), Lyzette Palmer ("Palmer"), J.P. Morgan Chase Bank of Texas ("J.P. Morgan"), Texas Commerce Bank ("Commerce Bank"), Northern Plains Natural Gas Company ("Northern Plains"), Transwestern Pipeline Company ("Transwestern"), Florida Gas Transmission Company ("Florida Gas"), Enron Liquids Pipeline Company ("Liquids Pipeline"), and John and Jane Does:

**I. JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). Specifically, this is an action brought by plan participants, beneficiaries, and fiduciaries under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., for relief under 29 U.S.C. § 1132(a).

2. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e) because breaches of fiduciary duties and statutory duties occurred in the State of Nebraska and a defendant resides and may be found in the State of Nebraska.

**II. THE PARTIES**

3. Plaintiff Geiler is a resident of Omaha, Douglas County, Nebraska. Geiler is a former employee of Northern Natural Gas ("NNG") and at relevant times was a participant in the Enron Medical and Dental Plan for Inactive Participants ("Enron Plan"), a beneficiary of the Enron Gas Pipelines Employee Benefit Trust ("Enron VEBA"), a participant in the Northern Natural Gas Company Medical and Dental Plan for Retirees and Surviving Spouses-a Constituent Benefit Program of Dynegy, Inc. Comprehensive Welfare Benefits Plan ("NNG Plan"), a beneficiary of the Northern Natural Gas Employee Benefit Trust Agreement ("NNG VEBA"), a participant in the MidAmerican Energy Company Welfare Benefit Plan ("MEC Plan") and a beneficiary of the

MidAmerican Energy Company Master VEBA Trust for Nonbargaining Employees ("MEC VEBA").

4. Plaintiff Moore is a resident of Papillion, Sarpy County, Nebraska. Moore is a former employee of NNG and at relevant times was a participant in the Enron Plan, a beneficiary of the Enron VEBA, a participant in the NNG Plan, a beneficiary of the NNG VEBA, a participant in the MEC Plan and a beneficiary of the MEC VEBA.

5. Plaintiff MEC Committee is the administrator of all of the plans that are associated with the MEC VEBA and counsels and advises the MEC VEBA trustee on MEC VEBA matters.

6. Plaintiff Wells Fargo is a national banking association with its headquarters in Sioux Falls, South Dakota and banking stores in 23 states. Wells Fargo is the current trustee of the MEC VEBA.

7. Upon information and belief, Defendant Jones is a resident of Omaha, Douglas County, Nebraska. Jones was/is an employee of Enron and was/is a member of the committee created pursuant to the Enron Plan ("Enron Committee") which is responsible for administering the Enron Plan and counseling and directing the Enron VEBA trustee regarding Enron VEBA matters.

8. Upon information and belief, Defendant Davis is a resident of The Woodlands, Texas. Davis was/is an employee of Enron and was/is a member of the Enron Committee responsible for administering the Enron Plan and providing direction to the Enron VEBA trustee regarding distribution of trust assets.

9. Upon information and belief, Defendant Lydecker is a resident of Texas. Lydecker was/is an employee of Enron and was/is a member of the Enron Committee

responsible for administering the Enron Plan and providing direction to the Enron VEBA trustee regarding distribution of trust assets.

10. Upon information and belief, Defendant Smith is a resident of Houston, Texas. Smith was/is an employee of Enron and was/is a member of the Enron Committee responsible for administering the Enron Plan and providing direction to the Enron VEBA trustee regarding distribution of trust assets.

11. Upon information and belief, Defendant Sullivan is a resident of Texas. Sullivan was/is an employee of Enron and was/is a member of the Enron Committee responsible for administering the Enron Plan and providing direction to the Enron VEBA trustee regarding distribution of trust assets.

12. Upon information and belief, Defendant Barnett is a resident of Oregon City, Oregon. Barnett was/is an employee of Enron and was/is a member of the Enron Committee responsible for administering the Enron Plan and providing direction to the Enron VEBA trustee regarding distribution of trust assets.

13. Upon information and belief, Defendant Palmer is a resident of Texas. Palmer was/is an employee of Enron and was/is a member of the Enron Committee responsible for administering the Enron Plan and providing direction to the Enron VEBA trustee regarding distribution of trust assets.

14. Upon information and belief, Defendant Commerce Bank was a Texas corporation with its principal place of business located in Texas. Upon information and belief, Commerce Bank was the trustee of the Enron VEBA at times material hereto and was a fiduciary responsible for management and administration of trust assets.

15. Upon information and belief, Defendant J.P. Morgan is a New York corporation with its principal place of business located in Chicago, Illinois. J.P. Morgan is the current trustee of the Enron VEBA and is responsible for management and administration of trust assets.

16. Upon information and belief, Commerce Bank has been acquired by Chase Bank of Texas, National Association, which is a division of J.P. Morgan. At times relevant to this proceeding, Commerce Bank and J.P. Morgan were responsible for management and administration of the trust assets of the Enron VEBA and will be collectively referred to herein as "Trustee".

17. Upon information and belief, Defendant Northern Plains is a Delaware corporation authorized to transact business in the State of Nebraska. Northern Plains was/is a federally regulated gas pipeline that participated in the Enron Plan and was/is entitled to a portion of the assets of the Enron VEBA.

18. Upon information and belief, Defendant Transwestern is a Delaware corporation with its principle place of business in Houston, Texas. Transwestern was/is a federally regulated gas pipeline that participated in the Enron Plan and was/is entitled to a portion of the assets of the Enron VEBA.

19. Upon information and belief, Defendant Florida Gas is a Delaware corporation and was/is a subsidiary of Citrus Corporation. Florida Gas was/is a federally regulated gas pipeline that participated in the Enron Plan and was/is entitled to a portion of the assets of the Enron VEBA.

20. Upon information and belief, Defendant Liquids Pipeline is a Delaware corporation now known as Kinder Morgan G.P., Inc. with its principle place of business

in Lakewood, Colorado. Upon information and belief, Liquids Pipeline was/is a federally regulated gas pipeline that participated in the Enron Plan and was entitled to a portion of the assets of the Enron VEBA.

21. NNG, Northern Plains, Transwestern, Florida Gas, and Liquids Pipeline are collectively referred to herein as "Participating Employers."

22. Defendants John and Jane Does (real names unknown) are all remaining unidentified fiduciaries of the Enron VEBA who were/are in anyway responsible for the administration of the trust assets at times material hereto.

## III. CLASS ACTION

23. The named individual Plaintiffs bring this class action lawsuit for damages and equitable relief on their behalf and on behalf of all individuals in the United States who were participants and dependents in the NNG Plan (collectively referred to "Participants and Dependents").

24. The identified class is so numerous that joinder of all members is impracticable. Upon information and belief, there are approximately 1,300 individuals who would constitute members of the class.

25. Common questions of law and fact link members of the class. All class members allege that Jones, Davis, Lydecker, Smith, Sullivan, Barnett, Palmer, J.P. Morgan, Commerce Bank, John and Jane Does (collectively referred to herein as the "Fiduciaries") breached their fiduciary duties under ERISA and committed other violations of ERISA. Questions common to all members of the class include:

a. Whether the Fiduciaries, despite having the authority and ability to do so and despite demands to do so, failed and/or refused to allocate and distribute assets from the Enron VEBA to the MEC VEBA; and

      b. Whether the Fiduciaries, despite having the authority and ability to do so and despite demands to do so, failed and/or refused to correct improper allocations of participants and dependents from the Enron Plan to NNG.

26. The claims of the class representatives are typical of the claims of the class as a whole. No unique facts or circumstances exist that set apart the representatives from the class.

27. The class representatives will thoroughly and adequately protect the interests of the class.

**CLASS ACTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(b)(1)**

28. Prosecution of separate actions by individual members of the class would create a risk of adjudication of the rights of the certain Participants and Dependents and the obligations of the Fiduciaries which would be dispositive of the interests of the other Participants and Dependents who are not a party to the action.

**CLASS ACTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(b)(2)**

29. This cause of action may be maintained as a class action because the Fiduciaries have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final equitable relief with respect to the class as a whole.

**CLASS ACTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(b)(3)**

30. The questions of fact and law common to the members of the class predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

## IV.  FACTUAL ALLEGATIONS

31. In 1993, Enron established the Enron VEBA for purposes of setting aside assets to provide benefits to participants and dependents who are covered under the Enron Plan.  The participants and dependents were or are employees and dependents of employees who work or worked for federally regulated gas pipeline entities of Enron that were covered by the Enron Plan.  The gas pipelines who participated in the Enron Plan at the creation of the Enron VEBA were NNG, Northern Plains, Transwestern, and Florida Gas.  At some point following the creation of the Enron VEBA, Liquids Pipeline also became a pipeline covered by the Enron Plan.

32. The Enron Plan, which the Enron VEBA funded, provided for the Enron Committee whose purpose was to make determinations as to when participants and dependents qualified for benefits under the Enron Plan.

33. On December 2, 2001, Enron filed a Voluntary Chapter 11 Bankruptcy Petition in the United States Bankruptcy Court for the Southern District of New York at Case No. 01-16034 ("Bankruptcy Proceeding").

34. In early 2002, Dynegy, Inc. ("Dynegy"), an entity interested in purchasing NNG from Enron, contacted the Enron VEBA and requested a list of participants and dependents of the Enron VEBA who would be designated as liabilities to NNG if NNG withdrew as a Participating Employer of the Enron VEBA.

35. On May 13, 2002, Hewitt Associates, LLC ("Hewitt"), the administrator and record keeper of the Enron VEBA, made an allocation and provided a list to Dynegy of participants, and their dependents, who allegedly retired from NNG.  Upon information and belief, the Fiduciaries adopted and approved the allocation made by Hewitt.

36. Representatives of Dynegy reviewed the list and claimed that some of the proposed participants and dependents did not retire from NNG, were not the spouse of an individual who retired from NNG, or generally did not qualify for coverage under the Enron Plan or NNG Plan. As a result, Dynegy informed Hewitt that it would not accept liability for such individuals. Upon information and belief, Hewitt and the Fiduciaries consented to the rejection of these individuals and revised the list ("Accepted List").

37. On June 14, 2002, Hewitt provided Dynegy with a calculation of the assets to be assigned and the projected liabilities to be assumed by the NNG Plan based upon the Accepted List. Upon information and belief, the Fiduciaries adopted and approved Hewitt's calculation (this initial calculation and all subsequent and proper adjustments are collectively referred to as the "Calculation").

38. The Accepted List contained all of the individuals that would be allocated to the NNG Plan upon NNG's withdrawal as a participating employer. It was Dynegy's understanding that the Enron VEBA would distribute assets in accord with the Calculation within 30 days of NNG's withdrawal as a participating employer.

39. Dynegy acquired NNG and, on July 1, 2002, NNG's withdrawal as a participating employer of the Enron VEBA became effective. Following its withdrawal, NNG established the NNG Plan and the NNG VEBA.

40. Pursuant to the terms of the Enron VEBA at the time NNG withdrew, within 30 days of a Participating Employer's withdrawal, the Enron Committee was to determine "whether any portion of the Trust Fund is attributable to the affected Participants and Dependents and forward a copy of its determination to the Trustee." Upon the Enron Committee's determination, the Trustee was to "segregate those assets

attributable to any such Participants and Dependents, and transfer those assets to the successor Trustee when it receives a designation of such successor from the withdrawing Participating Employer."

41. Upon its withdrawal, NNG demanded that the Enron Committee make its determination in accordance with the Accepted List and Calculation and that the Trustee distribute the assets accordingly.

42. Despite NNG's demand and approval of the Accepted List and the Calculation, the Enron Committee refused to make the required determination and the Trustee refused to make the required distribution. As a result, no assets were transferred from the Enron Plan or Enron VEBA to the NNG Plan or NNG VEBA.

43. On August 17, 2002, MidAmerican Energy Holdings Company ("MEHC") acquired NNG from Dynegy.

44. On January 1, 2003, the NNG VEBA was merged into the MEC VEBA.

45. On July 22, 2003, Enron filed a Motion in the Bankruptcy Proceeding which proposed an allocation of an additional 94 participants and dependents to NNG, despite the fact that those employees had not been included in the Accepted List or Calculation. On August 25, 2003, NNG filed an Objection to Enron's Motion, including a specific objection to the additional allocation of participants and dependents to NNG.

46. In addition to filing the Objection, NNG also made a separate request to the Enron VEBA for a complete list of all participants and dependents the Enron VEBA was now alleging should be allocated to NNG, for an explanation as to why the 94 new individuals had not been included in the Accepted List or Calculation, and for a list of the companies where the 94 individuals had been employed.

47. On July 15, 2004, the court in the Bankruptcy Proceeding entered an Order Confirming Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, and Related Relief ("Confirmed Plan"). The effective date of the Confirmed Plan was November 17, 2004.

48. Section 34.7 of the Confirmed Plan provides that the Debtors or the Reorganized Debtors "shall be entitled to terminate any and all Benefit Plans in accordance with the terms and provisions of the documents and instruments relating thereto and applicable law." The Benefit Plans covered by this section of the Confirmed Plan include the Enron Plan and the Enron VEBA.

49. As of this date, the Fiduciaries have not made the required determination and distribution despite NNG's demands over the past two years for such action.

50. Contemporaneously with the filing of this Complaint, Plaintiffs have served a copy of the Complaint on the United States Secretary of Labor and the United States Secretary of the Treasury as required by 29 U.S.C. § 1132(h).

**COUNT I**
**BREACH OF FIDUCIARY DUTY**
**(29 U.S.C. § 1104(a)(1)(A))**

51. Plaintiffs incorporate the allegations in paragraphs 1-50 as if fully set forth herein.

52. At relevant times the Fiduciaries are/were fiduciaries to the Participants and Dependents as defined under 29 U.S.C. § 1002(21). At relevant times, the Fiduciaries exercised discretion and/or control over the Enron VEBA.

53. As fiduciaries under ERISA, the Fiduciaries were obligated to act solely in the best interests of the Participants and Dependents. The Fiduciaries breached their fiduciary duty to act in the best interest of the Participants and Dependents by:

    a. Failing and/or refusing to allocate and distribute assets from the Enron VEBA to the MEC VEBA despite having the authority and ability to do so, despite demands to do so, and despite the requirement to do so; and

    b. Failing and/or refusing to correct improper allocations of participants and dependents from the Enron Plan to NNG despite having the authority and ability to do so, despite demands to do so, and despite the requirement to do so.

54. As a direct and proximate result of the Fiduciaries breach of their fiduciary duty to act in the best interest of the Participants and Dependents, the NNG and/or MEC Plan was and is not adequately funded with assets from the Enron VEBA.

55. Plaintiffs are entitled to all available relief permitted under 29 U.S.C. § 1109(a) as against the Fiduciaries, which includes, but is not limited to, the following:

    a. Restoration to the MEC VEBA for all losses and/or damages caused by the Fiduciaries' breaches.

    b. A declaration that the Accepted List is the complete and accurate list of individuals that were properly allocated to NNG from the Enron Plan and that the Fiduciaries are to distribute the assets of the Enron VEBA to Wells Fargo, as trustee of the MEC VEBA, that are properly attributable to such individuals.

    c. Attorneys fees and costs as provided under ERISA.

    d. Prejudgment interest and earnings on all amounts.

e. Such other, further, and different relief as to this Court seems just and equitable.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**
**(29 U.S.C. § 1104(a)(1)(D))**

56. Plaintiffs incorporate the allegations of paragraphs 1-55 as if fully set forth herein.

57. ERISA requires that a fiduciary act in accordance with the documents and instruments governing the plan. The Fiduciaries failed and refused to act in accordance with the Enron VEBA documents by:

a. Failing and/or refusing to allocate and distribute assets from the Enron VEBA to the MEC VEBA despite having the authority and ability to do so, despite demands to do so, and despite the requirement to do so; and

b. Failing and/or refusing to correct improper allocations of participants and dependents from the Enron Plan to NNG despite having the authority and ability to do so, despite demands to do so, and despite the requirement to do so.

58. As a direct and proximate result of the Fiduciaries breach of their fiduciary duty to act in accordance with the Enron VEBA documents, the NNG and/or MEC Plan was and is not adequately funded with assets from the Enron VEBA.

59. Plaintiffs are entitled to all available relief permitted under 29 U.S.C. § 1109(a) as against the Fiduciaries, which includes, but is not limited to, the following:

      a. Restoration to the MEC VEBA for all losses and/or damages caused by the Fiduciaries' breaches.

b. A declaration that the Accepted List is the complete and accurate list of individuals that were properly allocated to NNG from the Enron Plan and that the Fiduciaries are to distribute the assets of the Enron VEBA to Wells Fargo, as trustee of the MEC VEBA, that are properly attributable to such individuals.

c. Attorneys fees and costs as provided under ERISA.

d. Prejudgment interest and earnings on all amounts.

e. Such other, further, and different relief as to this Court seems just and equitable.

**COUNT III**
**BREACH OF CO-FIDUCIARY DUTY**
**(29 U.S.C. § 1105(a))**

60. Plaintiffs incorporate the allegations of paragraphs 1-59 as if fully set forth herein.

61. At relevant times the Fiduciaries were fiduciaries to the Participants and Dependents as defined under 29 U.S.C. § 1102(21). At relevant times the Fiduciaries exercised discretion and/or control over the Enron VEBA.

62. As fiduciaries under ERISA, the Fiduciaries are liable for the breaches of fiduciary responsibility of each of the other Fiduciaries because they participated in the acts and omissions as specifically set forth herein knowing that such acts or omissions were breaches of fiduciary obligations.

63. As fiduciaries under ERISA, the Fiduciaries are liable for the breaches of fiduciary responsibility of each of the other Fiduciaries because they had knowledge of the acts and omissions as specifically set forth herein and made no reasonable efforts under the circumstances to remedy the breaches.

64. Plaintiffs, are entitled to all available relief permitted under 29 U.S.C. § 1109(a) as against the Fiduciaries, which includes, but is not limited to, the following:

a. Restoration to the MEC VEBA for all losses and/or damages caused by the Fiduciaries' breaches.

b. A declaration that the Accepted List is the complete and accurate list of individuals that were properly allocated to NNG from the Enron Plan and that the Fiduciaries are to distribute the assets of the Enron VEBA to Wells Fargo, as trustee of the MEC VEBA, that are properly attributable to such individuals.

c. Attorneys fees and costs as provided under ERISA.

d. Prejudgment interest and earnings on all amounts.

e. Such other, further, and different relief as to this Court seems just and equitable.

**COUNT IV**
**DECLARATORY RELIEF**
**(28 U.S.C. §§ 2201-02, Fed. Rule Civ. Pro. 57)**

65. Wells Fargo incorporates the allegations of paragraphs 1-64 as if fully set forth herein.

66. Wells Fargo is a party to or beneficiary of certain trust agreements, which affects certain rights, status and other legal relations of Wells Fargo. There is an actual

and justiciable controversy or uncertainty among Wells Fargo and Defendants concerning certain rights, duties and obligations under such agreements, which controversy may be terminated or which uncertainty may be removed by a judgment or decree.

67. A judgment or decree regarding the parties' rights, status and other legal relations under such agreements will terminate the controversy or remove uncertainty.

68. The Fiduciaries have a duty to account for the interest and earning of the Enron VEBA assets.

69. Wells Fargo is entitled to a declaration against all of the Defendants that:

a. The Fiduciaries are to provide an accounting of all of the assets, including interest and earnings, held by the Enron VEBA;

b. The Accepted List is the complete and accurate list of individuals that were properly allocated to NNG from the Enron Plan and that the Fiduciaries are to distribute the assets of the Enron VEBA to Wells Fargo, as trustee of the MEC VEBA, that are properly attributable to such individuals.

c. No other Participating Employers have a claim to the assets to be distributed to Wells Fargo, as trustee of the MEC VEBA;

d. Wells Fargo is entitled to recover its attorneys' fees; and

e. For such other, further, and different relief as to this Court seems just and equitable.

**REQUEST FOR TRIAL**

Plaintiffs hereby request a trial in Omaha, Nebraska and a trial by jury to the extent they are entitled to the same on any one or more claims.

Dated this 7th day of June 2005.

LOU GEILER and LARRY MOORE, individually and on behalf of all participants and dependents in the Northern Natural Gas Retiree Welfare Plan, MIDAMERICAN ENERGY COMPANY PENSION AND EMPLOYEE BENEFITS PLANS ADMINISTRATIVE COMMITTEE, and WELLS FARGO BANK, NATIONAL ASSOCIATION, Plaintiffs,

By: *s/ Heather S. Voegele*____________

Gregory C. Scaglione, #19368
Donald L. Swanson, #16385
Heather S. Voegele, #22730
KOLEY JESSEN P.C.,
A Limited Liability Organization
1125 South 103rd Street, Suite 800
Omaha, NE 68124
(402) 390-9500
(402) 390-9005 (facsimile)
greg.scaglione@koleyjessen.com
donald.swanson@koleyjessen.com
heather.voegele@koleyjessen.com

Attorney for Plaintiffs.